UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMAYSHIA ETHEL
FLYNN,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____/

Case No. 2:17-cv-11640
District Judge Matthew F. Leitman
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (DE 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16) and AFFIRM THE COMMISSIONER'S DECISION**

**I.**    **RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment or remand (DE 14), **GRANT** Defendant's motion for summary judgment (DE 16), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

    Plaintiff, Tamayshia Ethel Flynn, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability income (DI) and supplemental security income (SSI) benefits. This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment or remand (DE 14), the Commissioner's cross-motion for summary judgment (DE 16), and the administrative record (DE 12).

### A.     Background and Administrative History

Plaintiff alleges her disability began on May 30, 2014, at the age of 55. (R. at 131, 135.) In her disability report, she lists several conditions (hypertension, dizziness, blurred vision, diabetes mellitus, uncontrolled high blood pressure, fatigue, headaches, possible nerve damage in the legs/back, and pain and numbness in the legs/back) that limit her ability to work. (R. at 171.) Her applications were denied on September 17, 2014. (R. at 60-77, 80-98.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 99-100.) ALJ Jerome B. Blum held a hearing on December 15, 2015. (R. at 36-59.) He issued an opinion on March 2, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 16-35.) On April 17, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1-6, 14-15.) Thus, ALJ Blum's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on May 24, 2017.

### B.     Plaintiff's Medical History

The administrative record contains approximately 580 pages of medical records, all of which was available to the ALJ at the time of his March 2, 2016

decision. (R. at 35, 232-811 [Exhibits 1F – 20F].) They will be discussed in detail, as necessary, below.

### C.     The Hearing and Administrative Decision

Plaintiff, who was represented by counsel, and vocational expert Pauline Pegram testified at the December 15, 2015 hearing. (R. at 36-59.) On March 2, 2016, ALJ Blum issued his decision. (R. at 16-35.) Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 30, 2014, the alleged onset date. (R. at 21.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, diabetic neuropathy, obesity, hypertension, diabetic retinopathy, and transient ischemic attacks (TIAs). (*Id*. at 22.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 22-23.) Between **Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) [*i.e., exertional limitations*] except that she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps,

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

> stairs, ladders, ropes, or scaffolds [*i.e., postural limitations*]. Additionally, due to side effects of medication, she should avoid workplace hazards such as moving machinery and unprotected heights [*i.e., environmental limitations*].

(*Id*. at 23-29.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. at 30.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. (R. at 30-31.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 30, 2014, through the date of his decision. (R. at 31.)

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence

4

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

5

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F. Analysis

Plaintiff identifies two claims of error. First, she asserts that the RFC failed to account for limitations caused by her medications.[2] Second, she asserts that the ALJ "violated the procedural aspect of the treating physician rule" with respect to the opinion of Plaintiff's cardiologist, Gunateet Goswami, M.D. (DE 14 at 12-19.) The Commissioner argues, among other things, that the Commissioner's decision "is supported by substantial evidence and free of harmful legal error[.]" (DE 16 at 1, 8-26.)

### 1. Medication side effects

#### a. The RFC's workplace hazard limitations

---

[2] Although nothing more is stated on this subject, Plaintiff's opening paragraph on this issue states that, "[t]he ALJ made an erroneous *Step Five* determination that is unsupported by the substantial weight of the evidence[.]" (DE 14 at 13 (emphasis added).) Since the rest of this argument is entirely focused upon the supportability of the RFC, as opposed to the Step 5 analysis, the Court will treat it solely as an attack on the ALJ's underlying RFC finding. *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding[,]" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.") (Duggan, J., *adopting report and recommendation of* Grand, M.J.); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

Preliminarily, Plaintiff's function report indicates difficulty with, *inter alia,* completing tasks and concentration. (R. at 185.) The administrative record is replete with medication and related side effect information. For example, Plaintiff's disability, function, and appeals disability reports each list several medications and/or side effects. (R. at 174, 187, 198.) Her August and December 2015 updated medication lists each contain more than 20 medicines. (R. at 221-222, 754-755, 758-759, 805-806, 809-810.) Additionally, at the December 15, 2015 hearing, Plaintiff testified that she takes pain killers (such as Fioricet, Percocet, Vicodin and/or Norco) and that the side effect of Percocet is sleeping. (R. at 42-44.) She also takes medication for diabetes (such as Januvia, Apidra insulin injections, Lantus, and Metformin) and uses foot creme. (R. at 44, 50-51.) She takes Lopressor and Catapres for blood pressure, which, if taken together, cause "a sedative effect . . . ." (R. at 46.) Her asthma medications include inhalers (such as Proventil and Qvar) and nebulizer treatments. (R. at 48.) Finally, she agreed that "a lot of the medication effects cause [her] sleepiness[,]" and she "sleep[s] a lot . . . during the day[.]" (R. at 51.)

In his March 2, 2016 decision, the ALJ determined that Plaintiff was exertionally limited to sedentary work, with certain postural limitations, and added that, "due to side effects of medication," Plaintiff "should avoid workplace hazards such as moving machinery and unprotected heights." (R. at 23, 28.) Within the

7

RFC determination, the ALJ explained that "her clinical examinations and other reports simply do not support her testimony and do not show a person incapable of performing work activities at a reduced range of the sedentary level of exertion." (R. at 29.) Then, at Step 4, the ALJ explained that "[t]he demands of the claimant's past relevant work exceed the [RFC] of a reduced range of sedentary." (R. at 30.)

Plaintiff argues that this "reduced range of sedentary semi-skilled work" does not include "the entirety of Plaintiff's documented limitations." (DE 14 at 13.)

### b. Evaluating symptoms (20 C.F.R. §§ 404.1529, 416.929)

In support of this argument, she points to 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.927(c)(3)(iv), which provides that the SSA will consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]" (*Id.*) According to Plaintiff, the ALJ "failed to mention[,] much less discuss[,] the medication side effects of drowsiness and fatigue that are prevalent throughout the record[,]" such as:

- Her testimony that sleepiness is a medication side effect. (R. at 44; *see also* R. at 46, 51.)

- Christina Blake, D.O.'s July 17, 2014 / August 13, 2014 opinion that Plaintiff "has tried multiple blood pressure medications which cause drowsiness and nausea at times[.]" (R. at 438.)

8

- Dr. Goswami's November 12, 2015 note that Plaintiff "is unable to stay awake and alert for any period of time after taking her blood pressure medications."  (R. at 606.)

- Dr. Goswami's August 28, 2014 note that Plaintiff "complains of ongoing symptoms of fatigue."  (R. at 607.)

- Dr. Goswami's November 17, 2015 physical RFC questionnaire, which explains that Plaintiff is "on multiple antihypertensives that result in fatigue[,]" and Plaintiff "tends to fall asleep after taking her medications[.]"  (R. at 612.)

(DE 14 at 14-15.)  Also, the Court acknowledges Dr. Blake's April 10, 2015 notes that Plaintiff is "taking gabapentin to help with peripheral neuropathy," it "make[s] her tired[,]" but it "helps with the numbness and tingling."  (R. at 637.)

Nonetheless, the ALJ complied with 20 C.F.R. §§ 404.1529, 416.929.  First, as the Commissioner notes, "[t]he fact that the ALJ did not specifically discuss or mention fatigue in the decision does not warrant a remand[,] because it was clearly discussed at the hearing as a side effect of her medication and was accordingly accommodated for the in RFC finding[.]"  (DE 16 at 9.)  In fact, the ALJ specifically asked Plaintiff about the side effects of medication and/or sleepiness from medication on at least three occasions.  (R. at 44, 46 & 51.)  *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("Judicial review of the Secretary's findings must be based on the record as a whole.  Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council.") (citations omitted).  Second,

9

Muhammad Khalid, M.D., the State Disability Determination Services examiner, noted Plaintiff's "difficulty with . . . completing tasks and concentration[,]" but assessed *less restrictive* environmental limitations (none, as opposed to the RFC's direction to avoid workplace hazards). (R. at 23, 28, 63, 65, 71, 73). Moreover, various other records indicate "no fatigue," or "negative for . . . fatigue." (R. at 323, 331, 456, 499, 644, 659, 737; *see also* R. at 198.) Further, while two earlier physical RFC questionnaires list side effects, the one dated December 3, 2015 does not. (R. at 438, 612, 617.) Finally, the RFC's workplace hazard restrictions are consistent with Plaintiff's December 22, 2013 discharge notes, which instruct that Plaintiff "should not drive or operate heavy machinery if [she is] taking medication(s) that may cause [her] to feel drowsy or dizzy." (R. at 526.) For these reasons, the Court should conclude that the RFC's limitation to "avoid workplace hazards such as moving machinery and unprotected heights" appropriately accounts for Plaintiff's medication side-effects of drowsiness and fatigue and is based upon substantial evidence.

### c.     Skill evaluation (20 C.F.R. §§ 404.1568, 416.968)

Plaintiff also questions her ability to perform semi-skilled work. By way of background, the VE testified that Plaintiff has "transferable skills to some clerical occupations, certainly in the medical field." (R. at 57.) After setting forth the RFC assessment, the ALJ concluded that Plaintiff was unable to perform any past

relevant work, which included skilled and semi-skilled positions. (R. at 30.) However, the ALJ then concluded that Plaintiff had acquired work skills from past relevant work. (*Id.*) Moreover, at Step 5, the ALJ found that these skills were "transferable to other occupations with jobs existing in significant numbers in the national economy[,]" based on the VE's testimony regarding work as a "medical clerk." (R. at 30-31, 57.)

"Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs *may* require *alertness* and *close attention* to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job *may* be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b) (emphases added).

Plaintiff posits that the side effects of fatigue and drowsiness "effect her ability to stay on task and perform the requisite concentration, persistence, and pace [CPP] needed to perform semi-skilled work . . . ." (DE 14 at 14.) She claims that proper evaluation of "the limitations of drowsiness and fatigue" would "at best allow her to perform unskilled work, if any work at all[,]" and application of

11

Medical Vocational Rule 201.06 would result in "a finding of disabled[,]" because Plaintiff "was 55 years old at the alleged onset date, with past work of a semi-skilled to skilled nature."  (DE 14 at 15.)

However, the ALJ's skill evaluation should stand.  First, while Drs. Blake's and Goswami's physical RFC questionnaires dated 2014 and 2015 each reflect that Plaintiff would have difficulty staying on task (R. at 439, 441, 613, 615, 618, 620), the ALJ appropriately discounted these RFC questionnaires for various reasons, which are set forth in greater detail below.

Second, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely credible for the reasons explained in this decision."  (R. at 24; *see also* R. at 29).  True, Plaintiff testified that she lays down during the daytime, mostly due to pain, and that she has difficulties focusing or maintaining concentration, likely as a result of her mini-strokes and blood pressure (R. at 45-47), and the VE testified that "a person's need to be lying down the majority of the day would be not consistent with full time competitive work[,]" (R. at 58-59).  However, the ALJ expressly acknowledged the October 10, 2013 Henry Ford Hospital records, at which time Plaintiff reported she was "taking all her medications regularly . . . [,]" but staff suspected "medication non compliance[.]"  (R. at 24, 260, 262, 267.)  In addition, the Court notes Dr. Goswami's July 31, 2014 suspicions of noncompliance with

12

hypertension and diabetes medications. (R. at 435-436.) Also, the ALJ found that Plaintiff's allegations regarding the severity of her hypertension, diabetes and TIAs were "not entirely credible." (R. at 25-27.) Other than the above-addressed argument that the ALJ did not comply with 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3) (DE 14 at 13), Plaintiff has not presented a developed argument challenging the ALJ's credibility assessment.[3]

### 2. Dr. Goswami's opinion evidence

ALJ Blum states that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (R. at 24.) Pertinent to this appeal, the ALJ assigned "not . . . significant weight" to the November 2015 opinion of Gunateet Goswami, M.D., Plaintiff's cardiologist (R. at 611-615). (R. at 28-29.)

---

[3] To be sure, the Commissioner points out that "there was no hypothetical question posed to the [VE] containing the exact limitations found in the RFC[.]" (DE 16 at 15.) More specifically, the ALJ posed questions to the VE about Plaintiff's past relevant work (R. at 51-56), then examined transferability of skills (R. at 56-58), and then concluded with a credibility hypothetical (R. at 58-59). However, the medical clerk job about which the VE testified is classified as sedentary, postural activities (climbing, balancing, stooping, kneeling crouching and crawling) are "not present," and neither are "high exposed places." Moreover, while "operating-controlling" is "significant," "moving mech. parts" is "not present." *See* DICOT 205.362-018 (G.P.O.), 1991 WL 671710 ("Hospital-Admitting Clerk") It appears that this job can be performed by someone with Plaintiff's RFC, in which case any error as to the hypothetical would be harmless and the ALJ's Step 5 determination would be supported by substantial evidence. Perhaps more importantly, Plaintiff has not raised a difference between the hypothetical posed to the VE and the RFC assessment as a basis for her appeal.

13

Plaintiff claims that the ALJ violated the procedural aspect(s) of 20 C.F.R. §§ 404.1527(c), 416.927(c) and SSR 96-2p by failing to offer "good reasons" for discounting Dr. Goswami's opinion. (DE 14 at 16-19.) It seems that Plaintiff's treatment relationship with Dr. Goswami began with an October 11, 2013 consultation at Henry Ford Macomb Hospital. (R. at 269-273.) On October 12, 2013, Plaintiff underwent a stress test, which revealed decreased exercise capacity, good hemodynamic stress, and no EKG evidence of exercise-induced myocardial ischemia (with nuclear perfusion to be reported separately). (R. at 346, 430.) Plaintiff saw Dr. Goswami for cardiological evaluation on October 25, 2013. (R. at 419-420.) On October 30, 2013, Dr. Goswami performed a cardiac catheterization, which revealed mild nonobstructive coronary artery disease, normal left ventricular systolic function, and patent bilateral renal arteries. (R. at 422-424, 451-452.) Plaintiff saw Dr. Goswami for cardiological evaluations on July 31, 2014, August 28, 2014 and November 12, 2015. (R. at 435-436, 605-608.) On November 17, 2015, Dr. Goswami completed a physical RFC questionnaire. (R. at 611-615.)

Within the ALJ's review of the medical records, he specifically acknowledged, *inter alia,* Dr. Goswami's October 2013 consultation with Plaintiff, as well as the October 30, 2013 cardiac catheterization. (R. at 24-25.) Then, within his review of the opinion evidence, the ALJ expressly observed:

14

> The record also contains a residual functional capacity assessment completed by the claimant's cardiologist, Dr. Goswami (Exhibit 15F [R. at 611-615]). Dr. Goswami opined that due to the claimant's hypertension she could lift and carry less than ten pounds, and sit, stand, or walk less than two hours. Additionally, he reported that the claimant would need an at will sit/stand/walk option, unscheduled breaks, and the use of an assistive device for standing and walking. The doctor opined that the claimant should avoid twisting, stooping, bending, crouching, squatting, and climbing ladders or stairs; and would be absent more than four days a month (Exhibit 15F). While the undersigned has given the opinion appropriate consideration, Dr. Goswami's opinion is not given significant weight because the limitations identified by the doctor are out of proportion with the objective medical evidence contained in the record and there is no evidence of an examination by Dr. Goswami that would support such limitations (20 CFR 404.1527 and 416.927).

(R. at 28-29.)

The SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] give[s] [a Plaintiff's] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "[T]he notice of the determination or decision [regarding a denial of benefits] must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (S.S.A. July 2, 1996).

15

Plaintiff points out that Dr. Goswami has been treating Plaintiff since October 2013 (R. at 612), and draws the Court's attention to specific records, such as:

- The results of the October 30, 2013 cardiac catheterization performed by Dr. Goswami, yet the impressions included "*[m]ild nonobstructive* coronary artery disease[,]" and "*[n]ormal* left ventricular systolic function," as well as "[p]atent bilateral renal arteries." (R. at 422-424, 451-452 (emphases added));

- Plaintiff's report of "numbness involving the left leg, left arm and left side of her face[]" at the July 31, 2014 evaluation, yet these notes also reflect the physician's "concern for noncompliance with medications" and suspicion of "significant dietary and medication noncompliance." (R. at 435-436);

- Dr. Goswami's August 28, 2014 and November 12, 2015 consultations for "uncontrolled hypertension," which notes collectively reflect Plaintiff's complaints of frequent falls, fatigue, and shortness of breath, as well as her use of a right knee brace and diagnoses of coronary artery disease, yet the earlier note concludes with, *inter alia*, advice "to stay off work through November 1, 2014 pending stabilization of systemic blood pressures[,]" and recommendations for dietary measures, such as a "low-fat, low-cholesterol diet . . . [,]" and both notes reflect impressions of "mild, non-obstructive" coronary artery disease based on the October 30, 2013 cardiac catheterization. (*See* R. at 605-608.)

(DE 14 at 18 (emphases added).) Plaintiff also refers to an October 11, 2013 echocardiogram, yet it revealed "inferior wall *mild* hypokinesis," and an October 12, 2013 stress test, which noted "decreased exercise capacity," although these do

16

not appear to have been performed by Dr. Goswami. (DE 14 at 18; R. at 425-427, 431-433 (emphasis added), 346, 430.)

Plaintiff claims that the ALJ did not "entitle the treating source to deference" or "assign weight using the factors" in 20 C.F.R. §§ 404.1527, 416.927. (DE 14 at 19.) However, the ALJ acknowledged Dr. Goswami's October 2013 hospital consultation with Plaintiff, later described Dr. Goswami as "claimant's cardiologist," and made an express assignment of weight to Dr. Goswami's November 17, 2015 physical RFC questionnaire, although the ALJ did not expressly cite its date. (R. at 24, 28-29.) Thus, the ALJ considered the examining relationship, treatment relationship and specialization factors. 20 C.F.R. §§ 404.1527(c)(1),(2),(5), 416.927(c)(1),(2),(5). In addition, the ALJ's consideration of the supportability and/or consistency factors, 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4), is reflected in his statements that Dr. Goswami's limitations are "out of proportion with the objective medical evidence contained in the record" and that "there is no evidence of an examination by Dr. Goswami that would support such limitations." (R. at 29.) In addition, Plaintiff has not replied to the Commissioner's detailed explanations for why "[o]bjective medical evidence does not support Dr. Goswami's opinion[,]" and "Dr. Goswami's examination findings do not support the limitations identified in her opinion." (DE 16 at 18-22, 22-26.)

17

Thus, the Court should conclude that the ALJ's treatment of Dr. Goswami's medical source opinion complies with 20 C.F.R. §§ 404.1527, 416.927.

## G. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment or remand (DE 14), **GRANT** Defendant's motion for summary judgment (DE 16), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 1, 2018            s/*Anthony P. Patti*
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on August 1, 2018, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti